UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------- X
                                                                    :
FRANK COGNETTA, GEORGE ORLANDO,                                     :
MATTHEW MATASSA, and ROY KOHN, in Their                             :
Capacity as Trustees for the WINE, LIQUOR &                         :
DISTILLERY WORKERS UNION LOCAL 1-D MAJOR                            :
MEDICAL PLAN,                                                       :
                                                                    :       17-CV-3065 (ARR) (RML)
                              Plaintiffs,                            :
                                                                    :
      -against-                                                     :       OPINION & ORDER
                                                                    :
JAMES BONAVITA, NICOLE BONAVITA, JOSEPH P.                          :
NAPOLI, and NAPOLI SHKOLNIK, PLLC,                                 :
                                                                    :
                              Defendants.                           :
--------------------------------------------------------------------- X

ROSS, United States District Judge:

    Plaintiffs Frank Cognetta, George Orlando, Matthew Matassa, and Roy Kohn are trustees of

the Wine, Liquor & Distillery Workers Union Local 1-D Major Medical Plan (the "Plan" or the

"Fund"), an employee benefit plan, as defined in Section 3 of the Employee Retirement Income

Security Act ("ERISA"), 29 U.S.C. § 1002(3). The Plan has paid approximately $110,000 to cover

medical expenses incurred by defendants James and Nicole Bonavita as a result of a car accident.

Pursuant to ERISA § 503(a)(3), 29 U.S.C. § 1132(a)(3), plaintiffs seek a declaratory judgment that the

Plan has an equitable lien or constructive trust in the amount of benefits paid against any award or

settlement that defendants might recover in a negligence action against third parties currently

pending in the Supreme Court of the State of New York, New York County. Defendants contend

that New York General Obligation Law § 5-335 ("Section 5-335"), a statute that precludes insurers

from exercising subrogation or reimbursement rights on a claimant's tort recovery, prohibits the

Plan from obtaining reimbursement from defendants' possible recovery in their personal injury

lawsuit. Defendants, to whom the state court granted summary judgment on the issue of liability,

1

also argue that plaintiffs' action is premature because defendants do not currently possess identifiable funds from which the Plan can recover. For the following reasons, I grant plaintiffs' motion for summary judgment on their declaratory judgment action.[1]

## BACKGROUND

Plaintiffs are trustees of the Plan. George Orlando Aff. ¶ 1, ECF No. 19 ("Orlando Aff."); Pls.' Mem. of Law in Supp. of Their Mot. for Declaratory J. 1, ECF No. 17 ("Pls.' Mem. of Law"). The Plan provides health benefits to employees and their dependents. Orlando Aff. ¶ 3. According to evidence plaintiffs adduce, the Plan is self-funded, which means that the Plan does not purchase insurance from an insurance company to satisfy its obligations to Plan participants. *Id.* ¶¶ 4–5. Rather, the benefits are "derived from contributions made by employers pursuant to the terms of their collective bargaining agreements," and all costs are "paid directly from the Plan's assets." *Id.*

Among its provisions, the Plan's Summary Plan Description (SPD), its operative document, contains a clause entitled, "Fund's Right to Subrogation, Assignment to Rights and Reimbursement." Compl. ¶ 13, ECF No. 1; Orlando Aff. ¶ 8. Under that clause, a Plan member agrees to reimburse the Plan for benefits paid if the member recovers on a claim in a liability action against a third party. Compl. ¶ 13; Orlando Aff. ¶ 8. The SPD states:

> Where the Fund has or may provide benefits to you or your dependent(s) in connection with or arising from an accident or other occurrence for which some other party or parties may be responsible ("Claims"), the Fund has the right, under the Plan, to subrogation, assignment and reimbursement to all Claims, rights, causes of action, or other interests that you or your dependent(s) has/have, or which may accrue against any party or parties . . . arising out of said accident or occurrence to the extent of any benefits paid by the Fund to you and/or your dependent(s) arising from said accident or occurrence. . . .

---

[1] Plaintiffs filed a motion for declaratory judgment. *See* ECF No. 18. As I explained in the docket entry dated April 16, 2018, I have construed plaintiffs' motion as a motion for summary judgment. ECF Entry, April 16, 2018; *see also Middlesex Ins. Co v. Mara*, 699 F. Supp. 2d 439, 444 (D. Conn. 2010) ("A court may properly address the merits of a declaratory action through a motion for summary judgment."); *Int'l Bhd. of Teamsters v. E. Conference of Teamsters*, 160 F.R.D. 452, 456 (S.D.N.Y. 1995) ("Because an action for a declaratory judgment is an ordinary civil action, a party may not make a *motion* for declaratory relief, but, rather, the party must bring an *action* for a declaratory judgment. . . . The only way plaintiffs' motion can be construed as being consistent with the Federal Rules is to construe it as a motion for summary judgment on an action for a declaratory judgment.").

> The Fund shall have an equitable lien on any amount received from any Claims from some other party or parties, to the extent of any benefits paid by the Fund to you and/or your dependent(s) . . . , and such amount received . . . shall be held in constructive trust for the sole benefit of the Fund until paid to the Fund.

Compl. ¶ 13; Orlando Aff. ¶ 8. If a Plan member or a dependent seeks a benefit payment as a result of an accident, that person must execute a Subrogation, Assignment of Rights, and Reimbursement Agreement ("Agreement") before he or she will receive any benefits. Compl. ¶ 13; Orlando Aff. ¶ 8. The Agreement, which "affirm[s] the Fund's rights of assignment, reimbursement and subrogation," states:

> I hereby subrogate, assign and transfer to the Plan all claims, rights, causes of action, or other interests . . . that I may have or which may accrue against any party or parties (including my own insurer) arising out of the [a]ccident to the extent of the benefits paid by the Plan on my or my dependent(s) behalf in connection with the [a]ccident.

> I agree to immediately reimburse the Plan, before all others, for the *full* amount of all benefits paid on my or my dependent(s) behalf by the Plan if there is a recovery of *any* amount in connection with the [a]ccident from any party or parties (including any insurance company), whether such recovery is full or partial and no matter how such recovery is characterized, why or by whom it is paid, or the type of expense for which it is paid. . . . I agree that, if less than the full amount paid by the Plan is received from any party or parties, the Plan shall be paid the full amount received. I understand that the Plan shall have a lien on any amount received, as a result of the [a]ccident, by me or my representatives (including my attorney), that is due to the Plan under this Agreement and any such amount shall be deemed to be held in trust either by me or by them, for the sole benefit of the Plan until paid either by me, or them, to the Plan.

Compl. ¶¶ 13, 21.

Defendant Nicole Bonavita is an active participant in the Plan. Orlando Aff. ¶ 6. Her husband, James Bonavita, was a "Covered Person" under the terms of the Plan when he was seriously injured in an automobile accident on September 12, 2013. *Id.* ¶ 7; Defs.' Mem. of Law in Opp'n to Pls.' Mot. for Declaratory J. 1, ECF No. 20 ("Defs.' Mem. of Law"). On December 8, 2015, the Bonavitas signed the Agreement. Orlando Aff. ¶ 10; Orlando Aff. Ex. 1, at 2–3. To date, the Plan has paid at least $110,000 in medical benefits on behalf of James Bonavita related to the injuries he sustained in the accident. Defs.' Mem. of Law 2; *see* Orlando Aff. ¶ 7.

On or about March 28, 2014, the Bonavitas filed an action in the Supreme Court of the State of New York, County of New York, alleging that the negligence of third parties caused the accident that resulted in James's injuries, his related medical expenses, and Nicole's loss of services. Defs.' Mem. of Law at 1; Orlando Aff. ¶ 9. On September 6, 2016, the Supreme Court of the State of New York granted the Bonavitas summary judgment on the issue of liability, leaving the issue of damages to be determined at trial. Orlando Aff. Ex. 2, at 1. Two of the three parties found liable, Quibble Cab Corp. and Mahmamoudou Siby, are insured by Fiduciary Insurance Company of America. Defs.' Mem. of Law 2. Fiduciary was placed into liquidation on July 25, 2017. *Id.*; Joseph P. Napoli Decl. Ex. A, ECF No. 21 ("Napoli Decl."). The third, Gregory Andrews, is insured by GEICO. Defs.' Mem. of Law 2. As of the filing of this opinion, defendants have received no settlement offers in the state action and there has been no judgment regarding damages. *Id.*; *see* Pls.' Mem. of Law 2.

On May 22, 2017, plaintiffs filed their complaint, requesting that the court "establish an equitable lien/constructive trust against the Defendants, joint and several, over that portion of the [state] Action Proceeds sufficient to reimburse the Plan for its Paid Benefits" in addition to interest, attorneys' fees, and costs.[2] Compl. ¶ 29. In their answer, defendants contend that plaintiffs' claim is barred by Section 5-335, which states that "no person entering into [a personal injury] settlement shall be subject to a subrogation claim or claim for reimbursement by an insurer and an insurer shall have no lien or right of subrogation or reimbursement against any such settling person . . . , with respect to those . . . expenses that have been . . . paid or reimbursed by said insurer." Napoli Decl. Ex. B. ¶ 3; N.Y. Gen. Oblig. Law 5-335(a). On January 17, 2018, plaintiffs served on defendants

---

[2] Plaintiffs neither submit evidence pertaining to nor address in their briefs the issues of interest, attorneys' fees, or costs. *See generally* Pls.' Mem. of Law. I, therefore, decline to address those issues. *Cf. Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998).

their motion for a declaratory judgment and on February 13, 2018, the parties filed the fully briefed motion. *See* ECF Nos. 18–21.

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine dispute" exists for the purposes of summary judgment "where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v. Cty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008). In assessing whether summary judgment is proper, the court considers "the pleadings, depositions, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011) (quoting *In re Bennett Funding Grp., Inc.*, 336 F.3d 94, 99 (2d Cir. 2003)). To defeat the motion, the nonmoving party "must come forward with specific facts showing that there is a genuine issue for trial." *LaBounty v. Coughlin*, 137 F.3d 68, 73 (2d Cir. 1998). In reviewing the record before it, "the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997).

## DISCUSSION

In light of what plaintiffs characterize as a "proximate expectation of a settlement or judgment" favorable to the Bonavitas in their state action, plaintiffs seek a declaratory judgment that the Plan has an equitable lien or constructive trust over defendants' potential recovery in the amount of benefits that the Plan has paid. Pls.' Mem. of Law 2. Defendants oppose plaintiffs' motion on three grounds. First, they argue that Section 5-335 prevents the Plan from seeking reimbursement on a potential personal injury settlement. *See* Defs.' Mem. of Law 3–4; Napoli Decl. Ex. B ¶ 3. Second, defendants assert that, even if Section 5-335 does not apply to the Plan, plaintiffs' motion

must be denied because there are "no identifiable funds [from] which the plan can recover," and the defendants must "be made whole before the plan can recover[]." Defs.' Mem. of Law 5–6. In other words, defendants contend that plaintiffs do not seek "appropriate equitable relief" under ERISA § 503(a)(3). Third, they argue that plaintiffs' lawsuit is premature and, thus, that a declaratory judgment would be inappropriate. *See id.* at 6. I will address each argument in turn.

## I. ERISA preempts the application of Section 5-335 to the Plan because the Plan is self-funded.

Defendants first argue that plaintiffs' claim "is barred by" Section 5-335. Napoli Decl. Ex. B ¶ 3. According to defendants, this is because "[f]ully-funded ERISA plans are not entitled to reimbursement for New York State Settlements." *Id.* ¶ 4. Alternatively, defendants appear to argue that plaintiffs' claim is barred because the Plan is not self-funded and, therefore, that Section 5-335 is not preempted by ERISA. *See* Defs.' Mem. of Law 3–4. Plaintiffs argue that the Plan is self-funded and, consequently, that ERISA preempts the application of Section 5-335 to the Plan. Pls. Mem. of Law 3–7. I agree with plaintiffs.

### A. ERISA Preemption

"The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). To that end, ERISA Section 514(a) expressly preempts "any and all" state laws that "relate to any employee benefit plan." 29 U.S.C. § 1144(a). A state law "relate[s] to" an employee benefit plan if that law "has a connection with or reference to such a plan." *Franklin H. Williams Ins. Tr. v. Travelers Ins. Co.*, 50 F.3d 144, 148 (2d Cir. 1995) (quoting *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739 (1985)). The scope of ERISA's express preemption clause is "as broad as its language." *FMC Corp. v. Holliday*, 498 U.S. 52, 59 (1990) (quoting *Shaw v. Delta Air Lines*, 463 U.S. 85, 98 (1983)).

Even where a state law "relate[s] to" an employee benefit plan, however, ERISA does not expressly preempt that law if it "regulates insurance." 29 U.S.C. § 1144(b). A law "regulates

insurance" if it is "specifically directed towards entities engaged in insurance" and "substantially affect[s] the risk pooling arrangement between the insurer and the insured." *Wurtz v. Rawlings Co.*, 761 F.3d 232, 240 (2d Cir. 1994) (quoting *Kentucky Ass'n of Health Plans, Inc. v Miller*, 538 U.S. 329, 342 (2003)). In such a situation, the state law is "saved" from express preemption. *Id.* Nevertheless, an employee benefit plan governed by ERISA cannot be "deemed . . . an insurance company or other insurer . . . for purposes of any law of any State purporting to regulate insurance." 29 U.S.C. § 1144(b)(2)(B). That is, a state law cannot escape ERISA preemption by erroneously classifying an employee benefit plan as "insurance." *See id.*

Whether a state law that regulates insurance applies to a plan or is preempted by ERISA depends on whether the plan purchases insurance. *See FMC Corp.*, 498 U.S. at 64; *see also Arnone v. Aetna Life Ins. Co.*, 860 F.3d 97, 107 (2d Cir. 2017). Where a plan buys insurance, it "remains an insurer for purposes of state laws 'purporting to regulate insurance.'" *FMC Corp.*, 498 U.S. at 61. By contrast, where a plan is self-funded and does not purchase insurance from an insurance company, ERISA "exempt[s]" the plan "from state laws that 'regulat[e] insurance.'" *Id.* (second alteration in original); *see also Wurtz*, 761 F.3d at 241 n.6.

**B. Section 5-335**

Section 5-335 provides that "no person entering into [a personal injury] settlement shall be subject to a subrogation claim or claim for reimbursement by an insurer and an insurer shall have no lien or right of subrogation or reimbursement against any such settling person . . . , with respect to those . . . expenses that have been . . . paid or reimbursed by said insurer." N.Y. Gen. Oblig. Law 5-335(a). As the Second Circuit recently explained, "[w]hen section 5-335 is applied, it effectively bars an insurer from reducing the benefits owed to an insured by the amounts the insured receives from a personal injury settlement." *Arnone*, 860 F.3d at 99–100. For purposes of ERISA, Section 5-335

"regulates insurance." *Wurtz*, 761 F.3d at 236; *Arnone*, 860 F.3d at 107. It therefore applies only to those plans that purchase insurance.

### C. Application

Defendants' argument that fully funded ERISA plans are not entitled to reimbursement on New York settlement claims fails as a matter of law. As the Supreme Court conclusively held in *FMC Corp.*, ERISA "exempt[s] self-funded . . . plans from state laws that 'regulat[e] insurance.'" 498 U.S. at 61 (third alteration in original); *see also Iron Workers Locals 40, 361 & 417 Health Fund v. Dinnigan*, 911 F. Supp. 2d 243, 251 (S.D.N.Y. 2012) ("Unless Defendants demonstrate[] that the Fund is insured (as opposed to self-funded), New York's anti-subrogation rules will be preempted."). Therefore, because Section 5-335 "regulates insurance," the only remaining question with respect to its applicability to the Plan is whether the Plan is self-funded.

Defendants have provided no evidence to rebut plaintiffs' evidence that the Plan is self-funded. Instead, defendants appear to advance an argument about ERISA's reporting requirements that is wholly unrelated to whether the Plan is self-funded. *See* Defs.' Mem. of Law 3–4. Specifically, defendants argue that under 29 U.S.C. § 1024(b)(4), plaintiffs were required to provide certain documentation about the Plan to the defendants within thirty days of receiving the defendants' request for it. *Id.* According to defendants, plaintiffs neglected to respond to their demands within the legally prescribed time period. *Id.* at 4. Although unclear, defendants' argument thus seems to be that the Plan has somehow lost its self-funded status by failing to timely deliver requested documentation. *See id.* at 3–4.

Defendants' argument is unpersuasive. Under 29 U.S.C. § 1024(b)(4), the Plan is required to send Plan participants or beneficiaries "upon written request" various documents relating to the Plan, such as the SPD, the latest annual report, any terminal report, the bargaining agreement, and

others.[3] As defendants argue, failure to supply these documents within thirty days from a participant's or beneficiary's request could subject the Plan to a penalty of $100 per day and other costs, such as attorney's fees. Defs.' Mem. of Law 4; 29 U.S.C. § 1132(c)(1). Defendants do not explain, however, how plaintiffs' allegedly untimely response to defendants' request bears on whether the Plan is self-funded. Nor would taking such a position be logical, as there is no relationship between whether an employee benefit plan fulfills its reporting obligations and whether that plan purchases insurance.

Because the record evidence on the issue is undisputed, I find that the Plan is self-funded and, therefore, that ERISA preempts the application of Section 5-335 to the Plan. *See Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1223 (2d Cir. 1994) ("[T]he moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case." (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986))); *see also Iron Workers Locals*, 911 F. Supp. 2d at 253 ("Since the Plan is self-funded, ERISA preempts New York State law regulating insurance and therefore . . . N.Y. GOL § 5-335 [is] inapplicable.").

## II. Plaintiffs seek "appropriate equitable relief."

Having found that the Plan is self-funded, I now address whether plaintiffs' request for a declaratory judgment that the Plan has an equitable lien or constructive trust over defendants' potential settlement or damages judgment constitutes appropriate equitable relief under ERISA § 502(a)(3). As detailed below, I conclude that it does.

### A. Plaintiffs' request for a declaratory judgment constitutes "appropriate equitable relief" under ERISA § 502(a)(3).

Defendants argue that plaintiffs cannot recover under ERISA § 502(a)(3) because the funds that the Plan seeks are not identifiable and not in their possession. *See* Defs.' Mem. of Law 5.

---

[3] In their brief, defendants include numerous other reporting requirements that are not actually contained in the statutory provision that they cite. *Compare* Defs.' Mem. of Law 3–4, *with* 29 U.S.C. § 1024(b)(4).

Plaintiffs contend that the Plan has "an equitable lien/constructive trust"[4] over the anticipated state proceeds because they seek identifiable funds distinct from the defendants' general assets. Pls.' Mem. of Law 2, 8.[5] In other words, plaintiffs do not seek the state action proceeds, which do not yet exist, or recovery from defendants' general assets, which would be a legal claim. Instead, they seek a declaration that the Plan has an equitable lien or constructive trust over the anticipated state proceeds and thus a right to reimbursement if and when those funds materialize. Such relief is equitable for purposes of ERISA § 502(a)(3).

### i. ERISA § 502(a)(3) and "appropriate equitable relief"

Under ERISA § 502(a)(3), fiduciaries, such as plaintiffs, can bring a civil suit "(A) to enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan, or (B) to obtain other appropriate equitable relief . . . to enforce . . . the terms of the plan." 29 U.S.C. § 1132(a)(3). The term "'equitable relief' in § 502(a)(3) is limited to 'those categories of relief that were *typically available in equity*' during the days of a divided bench." *Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan*, 136 S. Ct. 651, 657 (2016) (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993)). Whether the relief a plaintiff seeks "is legal or equitable depends on the basis for the plaintiff's claim and the nature of the underlying remedies sought." *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 363 (2006). This inquiry looks to "standard treatises on equity, which establish the 'basic contours' of what equitable relief was typically available in premerger equity courts." *Montanile*, 136 S. Ct. at 657 (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 208 (2002)).

---

[4] A constructive trust and an equitable lien are different, albeit similar, types of relief. *See* 1 Dan B. Dobbs, *Law of Remedies* § 4.3(3), at 601 (2d ed. 1993) ("Where the constructive trust gives a complete title to the plaintiff, the equitable lien only gives him a security interest in the property."). Because it appears that plaintiffs seek either type of relief, the distinction is not relevant here.

[5] In one of its section headings, plaintiffs' brief also states that the funds are "in the possession of defendants." Pls.' Mem. of Law 8. In the text of their brief, however, plaintiffs appear to acknowledge that the funds are not actually in defendants' possession and, instead, focus on the fact that they seek funds from the potential settlement or damages judgment that are distinct from the defendants' general assets. *See id.* I, therefore, operate under the assumption that plaintiffs' argument is the latter.

Both the basis for the plaintiff's claim and the remedy sought must be equitable to proceed under § 502(a)(3). *Id.*; *see also Coan v. Kaufman*, 457 F.3d 250, 264 (2d Cir. 2006).

The Supreme Court has gone to great lengths to clarify what constitutes "appropriate equitable relief" in the context of ERISA § 502(a)(3). In *Great-West*, an employee benefit plan sought injunctive and declaratory relief under ERISA § 502(a)(3) to enforce the reimbursement provision of the plan against settlement proceeds that beneficiaries of the plan had recovered from third parties. 534 U.S. at 208. The beneficiaries, however, did not possess the settlement funds, which had already been disbursed to the beneficiaries' attorneys and to a restricted trust. *Id.* at 214. Any money the court awarded, therefore, would necessarily derive from the beneficiaries' general assets.

The Supreme Court held that the plan could not enforce the provision because it was seeking legal, not equitable, relief. *Id.* at 210. It explained that a plaintiff could seek restitution in equity—how the petitioners described the relief they sought—"ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id.* at 213 (citing Dobbs, *supra*, § 4.3(1), at 587–88). The basis for the plan's claim was "not that respondents [held] particular funds that, in good conscience, belong[ed] to petitioners, but that petitioners [were] contractually entitled to *some* funds for benefits that they conferred." *Id.* at 214. Moreover, the specific funds to which the fiduciaries "claim[ed] an entitlement" were no longer in the beneficiaries' possession. *Id.* Therefore, even though the plan characterized the relief it sought as equitable, the Court found that the plan actually sought "to impose personal liability on respondents for a contractual obligation to pay money—relief that was not typically available in equity." *Id.* at 210.

In *Sereboff,* the Supreme Court faced the same issue: an employee benefit plan sought reimbursement from beneficiaries who had settled a tort action in state court. 547 U.S. at 359–361.

In *Sereboff*, however, the Court found that both the basis for the plan's claim and the remedy sought by the plan were equitable. *Id.* at 362–63. The basis for the claim was equitable because the plan sought to enforce an "equitable lien by agreement, a type of equitable lien created by an agreement to convey a particular fund to another party." *Montanile*, 136 S. Ct. at 658 (citing *Sereboff*, 547 U.S. at 363–64). The lien existed because the beneficiaries had signed an agreement with the plan that contained a provision that "specifically identified a particular fund, distinct from the Sereboffs' general assets" to which the plan was entitled, namely the proceeds of the third-party settlement related to the accident, as well as the portion of those proceeds due to the plan. *Sereboff*, 547 U.S. at 364. The Court stated that the claim to enforce the lien was equitable because the plan "could rely on a 'familiar rul[e] of equity'" to collect—the rule "that a contract to convey a specific object even before it is acquired will make the contractor a trustee as soon as he gets a title to the thing." *Id.* at 363–64 (alteration in original) (quoting *Barnes v. Alexander*, 232 U.S. 117, 121 (1914)). The Court clarified that the agreement provided the basis for the plan's claim even though the fund over which the lien was asserted did not exist when the agreement containing the lien provision was executed. *Id.* at 366. The Court also held that the remedies were equitable because the plan sought to enforce the lien established by the agreement against specific funds from the settlement, not the Sereboffs' general assets. *Id.* at 363. The plan, therefore, was entitled to relief.

The Supreme Court reinforced its holdings in *Great-West* and *Sereboff* in *Montanile*. There, the trustees of an employee benefit plan similarly sought reimbursement for benefits the plan had paid to a participant after he obtained a settlement in a negligence action. *Montanile*, 136 S. Ct. at 656. The trustees asked the district court to enforce an equitable lien upon any settlement funds or property in the defendant's "actual or constructive possession." *Id.* Unlike in *Great-West*, the participant in *Montanile* obtained title to the settlement fund but spent some or all of it before the plan sued to enforce the lien. *Id.* Even though the Supreme Court found that the plan "had an equitable lien by

12

agreement that attached to Montanile's settlement fund when he obtained title to that fund"—and thus, that the basis for the claim was equitable—the Court held that the remedy the plan sought was legal because the defendant no longer possessed the funds. *Id.* at 658–59. Therefore, as in *Great-West*, the plan could recover from only the beneficiary's general assets—"a quintessential action at law." *Id.* at 659.

Here, the *basis* of plaintiffs' claim is plainly equitable. As in *Sereboff* and *Montanile*, plaintiffs base their claim for an equitable lien or constructive trust on the terms of the SPD and the Agreement that defendants signed. These documents identify a particular fund to which the Plan is entitled, namely the potential recovery from defendants' state action, as well as the particular share of that fund to which the Plan is entitled—"the extent of any benefits paid by the Fund to [defendants] arising from said accident or other occurrence." Orlando Aff. ¶ 8. By "sufficiently indicat[ing] an intention to make some . . . fund, therein described or identified [in the contract], a security for a debt or other obligation," the parties "create[d] an equitable lien upon the property so indicated." 4 Spencer W. Symons, *Pomeroy's Equity Jurisprudence* § 1235, at 696 (5th ed. 1941). In addition, with regard to the basis of the claim, it is of no import that the funds do not yet exist. *See Sereboff*, 547 U.S. at 366 ("[T]he fund over which a lien is asserted need not be in existence when the contract containing the lien provision is executed."); *see also* Symons, *supra*, § 1236, at 699–700 ("It is well settled that an agreement . . . to give security upon . . . property not yet in existence, or in the ownership of the party making the contract, or property to be acquired by him in the future, . . . does constitute an equitable lien upon the property . . . acquired at a subsequent time.").

Whether the *remedy* plaintiffs seek is equitable poses a more difficult question. As defendants argue, they do not currently possess the funds that the Plan ultimately seeks. *See* Defs.' Mem. of Law 5–6. Unlike the plan beneficiaries in the aforementioned Supreme Court cases who secured settlements in their state cases before the respective plans sought relief, the Bonavitas have been

granted summary judgment on the issue of liability but have received neither a settlement offer nor a judgment as to damages. There are, therefore, no funds derived from the accident against which the Plan can enforce the lien at this time.

Contrary to defendants' arguments, however, the absence of funds does not mean that plaintiffs are without a remedy. Plaintiffs seek declaratory relief regarding hypothetical future funds—they do not demand that defendants immediately hand over funds that do not exist. To the extent that both parties in their briefing characterize the remedy sought in the context of possession, and, thus, in the context of restitution, *see Montanile*, 136 S. Ct. at 660, they do so mistakenly. *See* Pls.' Mem. of Law 7–8; Defs.' Mem. of Law 5. *Compare* Dobbs, *supra*, § 2.1(2), at 61 ("The fundamental idea of restitution is that the defendant must restore, (make restitution of) something which, in good conscience, belongs to the plaintiff."), *with id.* § 1.1, at 8 ("Declaratory remedies furnish an authoritative and reliable statement of the parties' rights. Other remedies may be added . . . but the declaratory remedy itself makes no award of damages, restitution, or injunction."). The real question in this case, therefore, is whether a declaration that the Plan has an equitable lien or constructive trust over defendants' anticipated settlement or damages judgment constitutes "equitable relief" under ERISA § 502(a)(3), even if plaintiffs can enforce the judgment only if defendants do, in fact, obtain the funds. Accordingly, I must determine whether this remedy was typically available in equity. *See Montanile*, 136 S. Ct. at 657.

### ii.  Declaratory judgments and "appropriate equitable relief"

Courts have interpreted ERISA § 502(a)(3) as creating a cause of action for a declaratory judgment. *See, e.g.*, *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 26–27 (1983). Although a declaratory judgment action is neither intrinsically equitable nor intrinsically legal, *Am. Safety Equip. Corp. v. J. P. Maguire & Co.*, 391 F.2d 821, 824 (2d Cir. 1968), "[m]any claims in equity . . . had as their major purpose a declaration of rights, so that the plaintiff might proceed with an

intelligent understanding of what he could and could not legally do," *Dakotas & W. Minn. Elec. Indus. Health & Welfare Fund ex rel. Stainbrook v. First Agency, Inc.*, 865 F.3d 1098, 1104 n.6 (8th Cir. 2017) (quoting Dobbs, *supra*, § 2.1(2), at 61), *cert. denied*, 138 S. Ct. 1285 (2018), *and* 138 S. Ct. 1296 (2018).[6] Nevertheless, "it is well established that '[a] declaratory judgment is not always a form of "equitable" relief.'" *Oxford Health Ins., Inc. v. Motherly Love Home Care Servs., Inc.*, 237 F. Supp. 3d 25, 33 (E.D.N.Y. 2017) (alteration in original) (quoting *Conn. Gen. Life Ins. Co. v. Cole*, 821 F. Supp. 193, 197 (S.D.N.Y. 1993)).

When determining whether to characterize a declaratory judgment as legal or equitable, courts take two approaches. First, they examine the "nature of the underlying controversy." *Transamerica Occidental Life Ins. Co. v. DiGregorio*, 811 F.2d 1249, 1251 (9th Cir. 1987); *see also Cole*, 821 F. Supp. at 197. To do so, courts often "look[] to the basic nature of the suit in which the issues involved would have arisen if Congress had not created the Declaratory Judgment Act." *Am. Safety Equip. Corp.*, 391 F.2d at 824. Second, they analyze whether "the declaratory judgment resembles a traditional equitable remedy that had declaratory effects." Dobbs, *supra*, § 2.6(3), at 164.

With regard to the first approach, the nature of the underlying controversy in this case is equitable. As previously discussed, plaintiffs are trustees of the Plan who seek to enforce the Plan's subrogation, assignment, and reimbursement provision against the specific proceeds of defendants' state action. In contrast to the plaintiffs in *Great-West* and *Montanile*, plaintiffs do not bring this suit to recover from defendants' general assets—a claim at law. 534 U.S. at 214; 136 S. Ct. at 658; *see also Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Gerber Life Ins. Co.*, 771 F.3d 150, 155 (2d Cir. 2014) (holding that an employee benefit plan could not seek reimbursement for covered individuals'

---

[6] *See also* Edwin Borchard, *Declaratory Judgments* 238 (2d ed. 1941) ("[T]he power granted by . . . declaratory judgment statutes is more strictly a direction to use an existing power than an authorization of new power. . . . [I]t is both historically and traditionally a power exercised primarily by courts of equity, and even where exercised by law courts it is largely equitable in nature.").

medical expenses from an insurance company's general assets). They also do not seek defensively to preempt a beneficiary's legal claims. *See, e.g.*, *Transamerica*, 811 F.3d at 1251–52 (holding that an insurance company's declaratory judgment action presented a legal claim where the underlying dispute was about a beneficiary's contractual claim for benefits). Rather, they ultimately seek "particular funds" that are likely to come into defendants' possession in light of the state court's finding of liability in defendants' favor. *Great-West*, 534 U.S. at 213.

Were declaratory relief not available, the underlying nature of this suit would not change—only the timing would. Plaintiffs would have to wait until the precise moment defendants recovered and then move immediately for an injunction requiring defendants to transfer the funds and preliminarily enjoining them from dissipating or comingling the funds.[7] In other words, the fact that the defendants do not yet possess the settlement or judgment funds—and, thus, plaintiffs seek a declaration of their rights to the funds if they materialize—"does not alter the *nature* of the [underlying] remedy that plaintiffs seek." *Admin. Comm. of the Wal-Mart Assocs. Health & Welfare Plan v. Willard*, 302 F. Supp. 2d 1267, 1275–76 (D. Kan.), *aff'd*, 393 F.3d 1119 (10th Cir. 2004) (emphasis added). But for the timing of the suit, plaintiffs are no different from the plaintiffs in *Sereboff* who "follow[ed]" a portion of the recovery "into the [Sereboffs'] hands" "as soon as [the settlement fund] was identified." 547 U.S. at 364 (second and third alterations in original) (quoting *Barnes*, 232 U.S. at 123). Once the settlement fund in this case is identified, plaintiffs have the right to do the same.

As to the second approach, the remedy that plaintiffs seek also closely resembles other remedies traditionally available in equity. *See CIGNA Corp v. Amara*, 563 U.S. 421, 440–42 (2011) (comparing the remedies awarded by the district court to similar remedies traditionally available in

---

[7] Such relief would be equitable, though, as demonstrated by *Montanile*, difficult to achieve in practice. *See Montanile*, 136 S. Ct. at 662; *see also Mertens*, 508 U.S. at 256 (describing an injunction as a type of relief typically available in equity).

equity). For example, plaintiffs' action is similar to a suit to quiet title, the "direct object" of which is "to declare and establish some particular estate, interest, or right . . . in the property which is the subject-matter." Pomeroy, *supra*, § 1395, at 1023; *see also* Dobbs, *supra*, § 1.1, at 9 ("Before declaratory judgment statutes were enacted, plaintiffs obtained relief that was sometimes essentially declaratory by suing . . . to quiet title."). Particularly pertinent to this case is that one could bring an action to quiet title in a court of equity even when he did not possess the property at issue. *See* Borchard, *supra*, at 140, 141 n.15 ("Where the estate or interest to be protected is equitable, the cloud may be removed and title quieted, whether the plaintiff is in or out of possession."); *see also Taylor v. Gray*, 90 So.2d 778, 780 (Ala. 1956) ("[A] remainderman not in possession, and with no right to the immediate possession, may maintain a bill to remove a cloud from his remainder interest."); *Maxwell v. Hamel*, 292 N.W. 38, 43 (Neb. 1940) ("Frequently the owner of a future interest as such can establish his ownership by a suit in equity to quiet title or to remove a cloud upon title.") (internal quotation marks and citation omitted).

Plaintiffs' action also could be likened to a proceeding known as a bill or petition for instructions. *See Dakotas*, 865 F.3d at 1104 (comparing a plan's declaratory judgment action to a bill for instructions and concluding that "[a] declaration of the insurers' respective rights" constituted "appropriate equitable relief" under ERISA § 502(a)(3)). Described as "one of the earliest forms of equitable declaration" when sought in an adversarial proceeding, Borchard, *supra*, at 576, bills for instruction provided trustees or fiduciaries with a judicial ruling "as to the proper course to pursue in handling property for the benefit of others." *Dakotas*, 865 F.3d at 1103. They operated as follows:

> The fiduciary who is in doubt must set forth the particular portion of the instrument concerning which he requests the determination of the court, and the facts on which he grounds his right to relief, showing that he has a present interest in a definitive adjudication of the question raised and supplying the names of any other parties who may be affected by the determination. The court, if it sees fit to grant the application, will then cite such parties as it deems requisite to show cause why the determination requested by the fiduciary should not be made. Whatever decree is then made, unless

reversed or modified, is thereafter conclusive on all parties to the proceeding and compliance with instructions given relieves the fiduciary from liability.

*Executors' and Trustees' Bills for Instructions*, 44 Yale L.J. 1433, 1436 (1935). By obtaining a preemptive ruling of the trustee's rights vis-à-vis the beneficiaries concerning the res of the trust, trustees were able to "obtain the protection of a judgment . . . sav[ing] them both risk and loss." Borchard, *supra*, at 576; *see also Executors' and Trustees' Bills for Instructions*, 44 Yale L.J at 1436 ("It is not surprising that the fiduciary who 'maketh doubt' and whose position is especially delicate when he is subjected to the cross-fire of beneficiaries with conflicting interest has eagerly sought to throw over himself the mantle of the reassuring words, 'Decreed they shall be protected.'").

Much like these two remedies typically available in equity, the declaratory relief that plaintiffs seek is protective. By declaring that the Plan imposes a lien on any third-party recovery in the amount of benefits paid—and thus, that any funds defendants recover actually belong to the Plan—a declaratory judgment in this case would operate coercively to enjoin defendants from squandering the state action proceeds if—or more likely when—they obtain possession of them. In essence, plaintiffs are attempting to avoid the pitfalls faced by the plans in *Great-West* and *Montanile*. Equity allows them to do so. *See* William Q. de Funiak, *Handbook of Modern Equity*, at 24 (2d ed. 1956) ("[I]t is clear that it has been the policy of equity to prevent a disobedience which appears reasonably probable.").

Based on the foregoing, I conclude that defendants' non-possession of the anticipated state proceeds does not preclude relief and find that plaintiffs' declaratory judgment action is an equitable claim seeking remedies typically available in equity and therefore available under ERISA § 502(a)(3).

### B. Under the terms of the Plan, defendants need not be "made whole" before plaintiffs can recover.

Defendants next argue that they must be "made whole" before the Plan can recover "despite a subrogation clause to the contrary." Defs.' Mem. of Law 5. Plaintiffs do not address this argument.

In the likely event that defendants recover in their state action, the terms of the Plan and the Agreement allow plaintiffs to recover regardless of whether defendants have been made whole.

The make-whole doctrine is a federal common law rule of contract interpretation. *See World Trade Ctr. Props. LLC v. QBE Int'l Ins. Ltd.*, 627 F. App'x 10, 13–14 (2d Cir. 2015). It encapsulates the equitable principle that an insurer cannot enforce its right to subrogation or reimbursement until the insured has been "made whole" through a third-party recovery. *See* Lee R. Russ et al., 16 *Couch on Insurance* § 223:134 (3d ed. 2000) ("[T]he general rule under the doctrine of equitable subrogation is that where an insured is entitled to receive recovery for the same loss from more than one source, e.g., the insurer and the tortfeasor, it is only after the insured has been fully compensated for all of the loss that the insurer . . . is entitled to enforce its subrogation rights."). It operates "in the absence of contrary statutory law or valid contractual obligations to the contrary." *Id.* That is, it functions as a default rule.

As the Supreme Court made clear in *US Airways, Inc. v. McCutchen*, equitable defenses, such as the make-whole rule, "give way when a court enforces an equitable lien by agreement" that repudiates the defense. 569 U.S. 88, 100 (2013); *see also Iron Workers Locals*, 911 F. Supp. 2d at 259 (finding the make-whole doctrine inapplicable in the face of plan terms explicitly rejecting its application). Where an agreement exists, it—and it, alone—"becomes the measure of the parties' equities." *McCutchen*, 569 U.S. at 100. When a plan is silent or ambiguous as to the issue in dispute, ordinary principles of contract interpretation govern. *Id.* at 102. In such a situation, courts "look outside the plan's written language" to determine what the plan means. *CIGNA Corp.*, 563 U.S. at 436 (citing *UNUM Life Ins. Co. v. Ward*, 526 U.S. 358, 377–79 (1999)).

In this case, defendants do not allege that the Plan is silent or ambiguous on the issues of subrogation or reimbursement—nor could they. Under the Plan's Subrogation, Assignment to Rights, and Reimbursement provision, the Plan puts participants on notice that, if they recover from

a third party, the Plan has the right to recover "any amount received . . . to the extent of any benefits paid . . . , arising from said accident," regardless of the participants' other expenses—and, therefore, regardless of whether the participants have been made whole. Compl. ¶ 13. The Agreement that defendants signed is similarly unambiguous and states: "I agree to immediately reimburse the Plan, before all others, for the *full* amount of all benefits paid on my or my dependent(s)['] behalf by the Plan if there is a recovery of *any* amount in connection with the [a]ccident . . . whether such recovery is full or partial and no matter how such recovery is characterized, why or by whom it is paid, or the type of expense for which it is paid." *Id.* ¶ 21. Although the SPD and the Agreement do not expressly refer to the make-whole doctrine, their plain language—particularly the sentence in the Agreement requiring beneficiaries to "immediately" repay the Plan "before all others . . . whether such recovery is full or partial"—indicates that the Plan has first priority over defendants' recovery, whether that recovery fully or partially covers defendants' expenses. As such, defendants have waived their right to be made whole. *See Fireman's Fund Ins. Co. v. TD Banknorth Ins. Agency Inc.*, 644 F.3d 166, 170 (2d Cir. 2011) ("[D]isplacement [of the make-whole doctrine] requires wording that speaks specifically to the priority of recovery."); *see also Moore v. CapitalCare, Inc.*, 461 F.3d 1, 10 (D.C. Cir. 2006) (finding similar language unambiguous, thus precluding application of the default make-whole doctrine); *Sunbeam-Oster Co. Grp. Benefits Plan for Salaried & Non-Bargaining Hourly Employees v. Whitehurst*, 102 F.3d 1368, 1374 (5th Cir. 1996) (same).

Finally, defendants' reliance on New York law is misplaced. *See* Defs.' Mem. of Law 5. This case is not based on diversity jurisdiction. Therefore, even if defendants are correct that "New York has applied and adheres to the existence of the Made Whole Doctrine," *id.*, I am guided by federal common law, not the law of New York. *See Sunbeam-Oster Co. Grp.*, 102 F.3d at 1374 ("[A]s it is well established that state subrogation doctrines are preempted under ERISA, we are not *Erie*-bound to apply Louisiana's partial subrogation rules here.") (citing *FMC Corp.*, 498 U.S. at 65).

Because the terms of the SPD and the Agreement clearly reject application of the make-whole doctrine, I will not apply it to preclude plaintiffs from recovering from the anticipated proceeds from defendants' state action.

### III.    Plaintiffs' action is not premature and a declaratory judgment is appropriate.

Finally, defendants argue that a declaratory judgment would be inappropriate in this case because "there is no actual controversy as the plaintiffs' case is too premature." Defs.' Mem. of Law 6. Plaintiffs contend that the opposite is true given the "highly probable likelihood that Defendants' reimbursement obligations will occur." Pls.' Mem. of Law 10. Because there has been a finding of liability in favor of the defendants in state court and, thus, a judgment or settlement in the state case is probable, I agree with plaintiffs.

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Under the Act, subject matter jurisdiction "exists only if there is an 'actual controversy.'" *E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154, 177 (2d Cir. 2001) (quoting 28 U.S.C. § 2201(a)). This prerequisite is "coextensive with the case and controversy requirement embedded in Article III of the Constitution." *Gov't Emps. Ins. Co. v. Saco*, No. 12-CV-5633 (NGG) (MDG), 2014 WL 639419, at *3 (E.D.N.Y. Feb. 18, 2014) (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128 (2007)). An actual controversy "must be a real and substantial controversy admitting of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241 (1937); *see Duane Reade Inc. v. St. Paul Fire and Marine Ins. Co.*, 411 F.3d 384, 388 (2d Cir. 2005). "The difference between an abstract question and a 'controversy'

contemplated by the Declaratory Judgment Act is necessarily one of degree." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

The existence of contingencies "does not necessarily defeat jurisdiction of a declaratory judgment action." *E.R. Squibb & Sons*, 241 F.3d at 177 (quoting *Associated Indem. Corp. v. Fairchild Indus., Inc.*, 961 F.2d 32, 35 (2d Cir. 1992)). "Indeed, litigation over insurance coverage has become the paradigm for asserting jurisdiction despite future contingencies that will determine whether a controversy ever actually becomes real." *Id.* (quoting *Associated Indem. Corp.*, 961 F.2d at 35). Where a contingency exists, "courts should focus on the practical likelihood that the contingenc[y] will occur." *Id.* (quoting *Associated Indem. Corp.*, 961 F.2d at 35); *see also Fed. Ins. Co. v. SafeNet, Inc.*, 758 F. Supp. 2d 251, 262 (S.D.N.Y. 2010).

Even if a case or controversy exists, district courts have discretion to decide whether to entertain—or award relief in—a declaratory judgment action. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 282, 289–90 (1995) ("[D]istrict courts' decisions about the propriety of hearing declaratory judgment actions . . . are necessarily bound up with their decisions about the propriety of granting declaratory relief."). To determine whether to exercise this authority, I must decide "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003) (citing *Broadview Chem. Corp. v. Loctite Corp.*, 417 F.2d 998, 1001 (2d Cir. 1969)).

The case or controversy requirement has been met in this case. Defendants have already signed the Agreement, received benefits for their medical expenses, filed suit against third parties in state court, and won on the issue of liability. Given these facts, the defendants' likelihood of recovering through a settlement or judgment—the only remaining contingency—"is more than conjectural." *Weigandt v. Farm Bureau Gen. Ins. Co.*, 54 F. Supp. 3d 756, 763 (E.D. Mich. 2014); *see also*

*Lafarge Can. Inc. v. Am. Home Assurance Co.*, No. 15-CV-8957 (RA), 2018 WL 1634135, at *4 (S.D.N.Y. Mar. 31, 2018) (explaining that courts typically "require the existence of liability before exercising [Declaratory Judgment Action] discretion over indemnity issues").

Although it is true that the financial position of two of the state defendants is somewhat precarious, this fact does not render the controversy between the parties any less real. *See Cent. States, Se. & Sw. Areas Health & Welfare Fund ex rel. Bunte v. Am. Int'l Grp., Inc.*, 840 F.3d 448, 451 (7th Cir. 2016) ("The trustee's request for a declaratory judgment regarding expenses the plan has *already paid* is plainly ripe for adjudication; that claim involves a definite injury between parties with adverse legal interests."). Contrary to defendants' assertions, whether and how much defendants recover in their state action is precisely the type of contingency that does not foreclose the issuance of a declaratory judgment. *See* Borchard, *supra*, at 419 ("It is not at all uncommon to declare rights between parties in contractual relations, the execution or enforcement of which depend upon future developments, even occasionally contingent."); *cf. Duane Reade, Inc.*, 411 F.3d at 389 (finding jurisdiction under the Declaratory Judgment Act to determine the scope of coverage provided by an insurance policy despite the fact that an appraisal of the amount of loss for which the insurer would be held liable had not yet occurred).

In addition, I find both discretionary factors satisfied. First, I find that a judgment in this case "will serve a useful purpose in clarifying" the legal issues involved, namely that Section 5-335 does not apply to the Plan and that the relief plaintiffs seek is equitable under ERISA § 502(a)(3). Further development of the factual record would not change these conclusions. Second, a judgment in this case will "finalize the controversy and offer relief from uncertainty" by giving force to the equitable lien by agreement and thus foreclosing defendants' ability to dissipate the funds. *See* Borchard, *supra*, at 542 ("[A] claim of lien . . . when declared, serves to impress the property with something like a trust, hence a protection to the claimant and a warning to the defendant not to deal

with the property or the claimant's rights in disregard of his declared interest."); *id.* at 984 ("It [is] frequently necessary to safeguard an existing right, even though its exercise may have to be postponed until further facts have become established, or notwithstanding the fact that a condition precedent has not been literally fulfilled."); *Dow Jones & Co. v. Harrods, Ltd.*, 237 F. Supp. 2d 394, 405 (S.D.N.Y. 2002) ("Declaratory relief . . . not only functions as an adjudicatory device but serves a preventive purpose as well. It permits the court in one action to define the legal relationships and adjust the attendant rights and obligations at issue between the parties so as to avoid the dispute escalating into additional wrongful conduct.").

Finally, I find that a declaratory judgment in this case is an appropriate remedy in light of ERISA's statutory purposes. As the Supreme Court commented in *Sereboff*, "ERISA provides for equitable remedies *to enforce plan terms*"—exactly the reason plaintiffs seek a declaratory judgment here. 547 U.S. at 363; *see Transamerica*, 811 F.2d at 1252 ("A declaratory judgment might . . . be sought to 'enforce' an ERISA term by establishing that the party against whom it is brought is charged with carrying out an ERISA duty which that party is allegedly disregarding.") (citing *United Food & Commercial Workers & Emp'rs Ariz. Health & Welfare Tr. v. Pacyga*, 801 F.3d 1157, 1159 (9th Cir. 1986)); *cf. Oxford Health Ins.*, 237 F. Supp. 3d at 33 (finding that a plan was not entitled to a declaratory judgment because it "neither [sought] to compel Defendants to comply with the terms of the Plan nor [sought] to enjoin Defendants from committing future violations of the Plan").

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for summary judgment on their declaratory judgment action is granted. It is hereby declared that the Plan has an equitable lien to the extent of benefits that the Plan has paid on behalf of defendants over the proceeds of any recovery by way of settlement or adjudication in defendants' state case. It is further ordered that defendants hold such proceeds in trust for the benefit of the Plan.

SO ORDERED.

_____/s/_____
Allyne R. Ross
United States District Judge

Dated:          June 7, 2018
                Brooklyn, New York